Henry C. Bunsow (State Bar No. 60707)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, CA  94105-2708
Telephone:  (415) 848-4900
Facsimile:   (415) 848-4999

Thomas M. Dunham (*pro hac vice*)
Nelson M. Kee (*pro hac vice*)
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
Telephone:  (202) 783-0800
Facsimile:   (202) 383-6610

Attorneys for Defendant
SUN MICROSYSTEMS, INC.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| AZUL SYSTEMS, INC., | ) |
| | ) |
| Plaintiff, | ) Case No. C 06-01988 EMC |
| | ) |
| v. | ) **SUN MICROSYSTEMS'** |
| | ) **ANSWER AND** |
| SUN MICROSYSTEMS, INC., | ) **COUNTERCLAIMS** |
| | ) |
| Defendant. | ) **JURY TRIAL DEMANDED** |
| | ) |

Sun Microsystems, Inc. ("Sun") hereby answers the corresponding paragraphs of Azul

Systems, Inc.'s ("Azul") Complaint for Declaratory Judgment ("Complaint"), and in so doing

denies the allegations of the Complaint except as specifically admitted below.

1.      Sun admits that Azul invokes 28 U.S.C. §§ 2201 and 2202 and that Azul seeks a

declaratory judgment against Sun.  Sun also admits that a justiciable controversy exists in this

ANSWER and COUNTERCLAIMS

case as to U.S Patent Nos. 6,003,065; 6,862,664; 6,901,491; 6,938,130; and 7,013,454.  Sun denies the remaining allegations in paragraph 1 of the Complaint.

2.     Sun admits that Azul invokes 28 U.S.C. §§ 2201 and 2202 as to misappropriation of trade secrets in violation of California state law and that Azul seeks a declaratory judgment against Sun.  Sun denies the remaining allegations in paragraph 2 of the Complaint.

## PARTIES

3.     Sun lacks information sufficient to admit or deny this paragraph and therefore denies each and every allegation in paragraph 3 of the Complaint.

4.     Sun admits the allegations in paragraph 4 of the Complaint.

## JURISDICTION AND VENUE

5.     Sun admits that this Court has jurisdiction over this action.

6.     Sun admits that venue is proper in this judicial district and division.

## GENERAL ALLEGATIONS

7.     Sun admits the allegations in paragraph 7 of the Complaint.

8.     Sun admits that it met with Azul for over a year in an attempt to negotiate a license with Azul.  Sun denies the remaining allegations in paragraph 8 of the Complaint.

9.     Sun admits that it met with Azul on April 6, 2005. Sun admits that it pointed out that certain employees of Azul are former employees of Sun with continuing duties not to disclose Sun trade secrets and confidential information, and that Sun was concerned that Sun's proprietary and confidential information was being incorporated into Azul's products without Sun's authorization.  Sun admits that it emphasized its commitment to innovation as evidenced for example by its patent portfolio of over 4,500 United States Patents.  Sun admits that it alleged that Azul was, or was likely to be, infringing the '664 patent.  Sun denies the remaining allegations of paragraph 9 of the Complaint.

ANSWER and COUNTERCLAIMS          2

10.     Sun admits that Azul asked Sun to clarify the nature of its trade secret claims. Sun denies that it has never done so.  By way of example, during a September 13, 2005 meeting, Sun provided details of its trade secret concerns to Azul.  Sun denies the remaining allegations in paragraph 10 of the Complaint.

11.     Sun denies that it refused every non-litigation option with regards to trade secrets because even Azul admitted that its suggestions were unworkable.  In fact, Sun had accepted in concept a mechanism proposed by Azul for resolution of the trade secret issues, pending a few process revisions requested by Sun – which proposal was pending Azul's final approval when Azul instead filed the instant action.  Sun admits that that it sent a letter dated May 16, 2005 to Azul questioning the value of, and the need for, the services of a mediator or independent auditor to uncover evidence of Azul's misuse of Sun's trade secrets and technology when Azul's own company literature already clearly referenced fundamental Sun technology and numerous industry analysts had mentioned how the technology was first explored by Sun.  Sun denies the remaining allegations of paragraph 11 of the Complaint.

12.     Sun admits that it developed a list of trade secrets and that it expressed genuine concern that Azul had misappropriated and misused Sun's trade secrets in Azul's design and development and design of its business and products.  Sun further admits that it provided the contents of its trade secret list to Azul at least during a meeting on September 13, 2005, in an effort to help Azul move the discussions meaningfully forward.  Sun denies that it refused to disclose any of its trade secrets to Azul, thereby producing an apprehension of suit.  Sun further denies the remaining allegations in paragraph 12 of the Complaint.

13.     Sun admits that it met with Azul on September 13, 2005, and that it accused Azul of infringing or likely preparing to infringe the '130 patent.  Sun denies the remaining allegations in paragraph 13 of the Complaint.

ANSWER and COUNTERCLAIMS            3

14.     Sun admits the allegations in paragraph 14 of the Complaint.

15.     Sun admits the allegations in paragraph 15 of the Complaint.

16.     Sun admits that on or about February 16, 2006, a Sun executive telephoned a member of Azul's board of directors.  Sun denies Azul's characterization of that call, as Sun placed the call in an attempt to establish high-level communications that might advance resolution of the dispute between the two companies.  Sun also admits that on or about February 17, 2006, Sun and Azul again spoke by telephone.  Sun likewise denies Azul's characterization of the second call, as the discussion centered on mechanisms for advancing discussions between Sun and Azul as an alternative to litigation.  Sun denies the remaining allegations in paragraph 16 of the Complaint.

17.     Sun admits that it met with Azul on March 8, 2006.  Sun denies the remaining allegations in paragraph 17 of the Complaint.

18.     Sun admits that Azul has been unwilling to reach agreement with Sun as to Sun's allegations of trade secret misappropriation and patent infringement.  Sun denies the remaining allegations in paragraph 18 of the Complaint.

19.     Sun denies the allegations in paragraph 19 of the Complaint.

20.     Sun admits that an actual, substantial and continuing justiciable controversy exists with Azul regarding Azul's infringement of U.S. Patent Nos. 6,003,065; 6,862,664; 6,901,491; 6,938,130; and 7,013,454.  Sun further admits that an actual, substantial and continuing justiciable controversy exists regarding Azul's misappropriation and use of Sun's trade secrets. Sun denies the remaining allegations of paragraph 20 of the Complaint.

ANSWER and COUNTERCLAIMS            4

**FIRST CLAIM FOR RELIEF**

**Declaratory Relief – '297 Patent**

21.    Sun hereby incorporates its response to paragraphs 1-20 above as if fully set forth herein.

22.    Sun lacks information sufficient to admit or deny the allegations of paragraph 22 of the Complaint and therefore denies the same.

**SECOND CLAIM FOR RELIEF**

**Declaratory Relief – '417 Patent**

23.    Sun hereby incorporates its response to paragraphs 1-20 above as if fully set forth herein.

24.    Sun lacks information sufficient to admit or deny the allegations of paragraph 24 of the Complaint and therefore denies the same.

**THIRD CLAIM FOR RELIEF**

**Declaratory Relief – '457 Patent**

25.    Sun hereby incorporates its response to paragraphs 1-20 above as if fully set forth herein.

26.    Sun lacks information sufficient to admit or deny the allegations of paragraph 26 of the Complaint and therefore denies the same.

**FOURTH CLAIM FOR RELIEF**

**Declaratory Relief – '723 Patent**

27.    Sun hereby incorporates its response to paragraphs 1-20 above as if fully set forth herein.

28.    Sun lacks information sufficient to admit or deny the allegations of paragraph 28 of the Complaint and therefore denies the same.

ANSWER and COUNTERCLAIMS                5

**FIFTH CLAIM FOR RELIEF**

**Declaratory Relief – '383 Patent**

29.     Sun hereby incorporates its response to paragraphs 1-20 above as if fully set forth herein.

30.     Sun lacks information sufficient to admit or deny the allegations of paragraph 30 of the Complaint and therefore denies the same.

**SIXTH CLAIM FOR RELIEF**

**Declaratory Relief – '298 Patent**

31.     Sun hereby incorporates its response to paragraphs 1-20 above as if fully set forth herein.

32.     Sun lacks information sufficient to admit or deny the allegations of paragraph 32 of the Complaint and therefore denies the same.

**SEVENTH CLAIM FOR RELIEF**

**Declaratory Relief – '210 Patent**

33.     Sun hereby incorporates its response to paragraphs 1-20 above as if fully set forth herein.

34.     Sun lacks information sufficient to admit or deny the allegations of paragraph 34 of the Complaint and therefore denies the same.

**EIGHTH CLAIM FOR RELIEF**

**Declaratory Relief – '736 Patent**

35.     Sun hereby incorporates its response to paragraphs 1-20 above as if fully set forth herein.

36.     Sun lacks information sufficient to admit or deny the allegations of paragraph 36 of the Complaint and therefore denies the same.

**NINTH CLAIM FOR RELIEF**

**Declaratory Relief – '990 Patent**

37. Sun hereby incorporates its response to paragraphs 1-20 above as if fully set forth herein.

38. Sun lacks information sufficient to admit or deny the allegations of paragraph 38 of the Complaint and therefore denies the same.

**TENTH CLAIM FOR RELIEF**

**Declaratory Relief – '104 Patent**

39. Sun hereby incorporates its response to paragraphs 1-20 above as if fully set forth herein.

40. Sun lacks information sufficient to admit or deny the allegations of paragraph 40 of the Complaint and therefore denies the same.

**ELEVENTH CLAIM FOR RELIEF**

**Declaratory Relief – '664 Patent**

41. Sun hereby incorporates its response to paragraphs 1-20 above as if fully set forth herein.

42. Sun admits that Azul seeks a declaration that no device made, used, sold, or offered for sale by Azul uses the '664 Patent and/or that it is invalid and/or unenforceable, but denies the remaining allegations in paragraph 42 of the Complaint.

**TWELFTH CLAIM FOR RELIEF**

**Declaratory Relief – '130 Patent**

43. Sun hereby incorporates its response to paragraphs 1-20 above as if fully set forth herein.

ANSWER and COUNTERCLAIMS           7

44.     Sun admits that Azul seeks a declaration that no device made, used, sold, or offered for sale by Azul uses the '664 Patent [sic – '130 Patent] and/or that it is invalid and/or unenforceable, but denies the remaining allegations in paragraph 44 of the Complaint.

### THIRTEENTH CLAIM FOR RELIEF

### Declaratory Relief – '491 Patent

45.     Sun hereby incorporates its response to paragraphs 1-20 above as if fully set forth herein.

46.     Sun admits that Azul seeks a declaration that no device made, used, sold, or offered for sale by Azul uses the '491 Patent and/or that it is invalid and/or unenforceable, but denies the remaining allegations in paragraph 46 of the Complaint.

### FOURTEENTH CLAIM FOR RELIEF

### Declaratory Relief – '295 Patent

47.     Sun hereby incorporates its response to paragraphs 1-20 above as if fully set forth herein.

48.     Sun lacks information sufficient to admit or deny the allegations of paragraph 48 of the Complaint and therefore denies the same.

### FIFTEENTH CLAIM FOR RELIEF

### Declaratory Relief – '693 Patent

49.     Sun hereby incorporates its response to paragraphs 1-20 above as if fully set forth herein.

50.     Sun lacks information sufficient to admit or deny the allegations of paragraph 50 of the Complaint and therefore denies the same.

ANSWER and COUNTERCLAIMS          8

## SIXTEENTH CLAIM FOR RELIEF

### Declaratory Relief – '917 Patent

51.     Sun hereby incorporates its response to paragraphs 1-20 above as if fully set forth herein.

52.     Sun lacks information sufficient to admit or deny the allegations of paragraph 52 of the Complaint and therefore denies the same.

## SEVENTEENTH CLAIM FOR RELIEF

### Declaratory Relief – '839 Patent

53.     Sun hereby incorporates its response to paragraphs 1-20 above as if fully set forth herein.

54.     Sun lacks information sufficient to admit or deny the allegations of paragraph 54 of the Complaint and therefore denies the same.

## EIGHTEENTH CLAIM FOR RELIEF

### Declaratory Relief – '757 Patent

55.     Sun hereby incorporates its response to paragraphs 1-20 above as if fully set forth herein.

56.     Sun lacks information sufficient to admit or deny the allegations of paragraph 56 of the Complaint and therefore denies the same.

## NINETEENTH CLAIM FOR RELIEF

### Declaratory Relief – '065 Patent

57.     Sun hereby incorporates its response to paragraphs 1-20 above as if fully set forth herein.

ANSWER and COUNTERCLAIMS                9

58.     Sun admits that Azul seeks a declaration that no device made, used, sold, or offered for sale by Azul uses the '065 Patent and/or that it is invalid and/or unenforceable, but denies the remaining allegations in paragraph 58 of the Complaint.

### TWENTIETH CLAIM FOR RELIEF

### Declaratory Relief – '454 Patent

59.     Sun hereby incorporates its response to paragraphs 1-20 above as if fully set forth herein.

60.     Sun admits that Azul seeks a declaration that no device made, used, sold, or offered for sale by Azul uses the '454 Patent and/or that it is invalid and/or unenforceable, but denies the remaining allegations in paragraph 60 of the Complaint.

### TWENTY FIRST CLAIM FOR RELIEF

### Declaratory Relief – Trade Secrets

61.     Sun hereby incorporates its response to paragraphs 1-20 above as if fully set forth herein.

62.     Sun admits that Azul seeks a declaration that it has not directly or indirectly misappropriated or converted any Sun trade secrets, but denies the remaining allegations of paragraph 62 of the Complaint.

### SUN'S COUNTERCLAIMS[1]

1.     Sun is recognized as an innovator and leader in computer and internet-related technologies including servers and distributed processing systems incorporating multi-core processors, Java programming language and the acceleration of Java applications, and memory management including garbage collection, array access bounds checking, and transactional

memory.  Sun's commitment to innovation has fostered and continues to foster significant advances in technology.  Sun stays ahead of its competition by reinvesting as much as 25% of its net product revenues into research and development annually -- nearly $2 billion in FY 2005 -- and has been awarded hundreds of patents covering various aspects of these technologies.  Along with building new technologies, Sun also shares its innovations with the community, under terms that promote adoption and innovation.  For example, Sun released its UltraSPARC TI processor design to the open-source community under the GNU General Public License.  Nevertheless as explained below, Azul has resorted to the misappropriation of Sun's trade secrets.

2.      In the course of its business, Sun has invested years of labor and billions of dollars in the development of its confidential and proprietary information.

3.      Sun has used and continues to use a variety of means to protect its confidential information, including the use of appropriate confidentiality and employment agreements and corporate policies, training courses, restrictions permitting access to the information on a "need-to-know" basis, records management processes, and password protections.

4.      In 2000, Sun purchased server appliance maker Cobalt Networks, Inc. ("Cobalt") for approximately $2 billion.

5.      In connection with Sun's purchase of Cobalt, Cobalt CEO Stephen DeWitt ("DeWitt") became an employee of Sun and entered into a non-compete agreement which was effective beginning December 12, 2000.  Sun conditioned its purchase of Cobalt, and the hiring of DeWitt, on DeWitt's acceptance of the non-compete agreement.  Under the terms of the agreement, DeWitt promised not to engage in competitive business activity related to computer

---

[1] Sun reserves the right to assert additional defenses and/or counterclaims (*e.g.*, Tortious Interference with Prospective Business Advantage) as discovery progresses and additional facts are developed.

ANSWER and COUNTERCLAIMS            11

systems and servers, including appliance servers, or to solicit employees to leave Sun for two full years from the effective date of the non-compete agreement.

6.      Upon information and belief, incident to Sun's purchase of Cobalt, DeWitt was extremely well compensated and acquired stock valued at approximately $100 million. Notwithstanding this extraordinary compensation, DeWitt failed to abide by the basic terms of his employment agreement and by the terms of his non-compete and non-solicitation agreement with Sun.

7.      Upon information and belief, Azul was formed in 2002 and makes network attached processing systems to accelerate Java applications. Azul offers to sell and sells its products in the marketplace in competition with Sun's server products.

8.      Upon information and belief, DeWitt left Sun in May of 2002. Notwithstanding the fact that his covenant not to compete with Sun was still fully in force, by June of 2002 DeWitt was in talks with Azul and became Azul's Chief Executive Officer at least as early as October 2002. DeWitt was and remains instrumental in the direction-setting and operations of Azul.

9.      Upon information and belief, many key Azul employees are former Sun employees who now work on the same or substantially similar technology as they did when at Sun. A number of Sun employees left Sun to join Azul at or around the same time that DeWitt joined Azul. Upon information and belief, these employees were specifically targeted for recruiting by Azul. Certain notable former Sun employees who went to Azul include:

a.      DeWitt, who was Vice President and General Manager of Content Delivery and Edge Computing at Sun and is now President and Chief Executive Officer at Azul;

b.      Shahin Khan, who was Vice President of High Performance Computing at Sun and is now Vice President and Chief Marketing Officer at Azul;

ANSWER and COUNTERCLAIMS          12

c.      Kevin Normoyle, who was a SPARC Processor Architect at Sun and was the Chief Architect at Azul;

d.      Cliff Click, who was a Senior Staff Engineer at Sun and is now a Senior Staff Engineer at Azul;

e.      Paul Koike, who joined Sun as part of its acquisition of Afara (described in Paragraph 12, below) as Director of Physical Design at Sun and who left shortly thereafter to become the Director of Silicon Technology at Azul;

f.      Anup Sharma, who joined Sun as part of its acquisition of Afara as a member of the Afara and Niagara Development teams at Sun and who left shortly thereafter for employment in a similar capacity at Azul;

g.      David Murata, who was a Physical Circuit Designer at Sun and is now employed in a similar capacity at Azul;

h.      James McIlree, who was a Senior Staff Designer in the "Hot Spot" Group at Sun and was employed in a similar capacity at Azul;

i.      John Staten, who was a Marketing Director and Storage Strategist at Sun and is now employed in a similar capacity at Azul; and

j.      John (Jack) O'Brien, who was a Distinguished Engineer in Java Identity and Systems Software at Sun and is now employed in a similar capacity at Azul.

10.      As a condition of employment at Sun, each of the individuals identified in Paragraph 9 above agreed to and was bound by an Employee Proprietary Information Agreement ("EPIA"), whereby they agreed in writing to keep confidential and to not disclose or make use of, except for the benefit of Sun, at any time either during or subsequent to their employment with Sun, any trade secrets or confidential information of Sun, including but not limited to knowledge, data, or other information relating to products, processes, know-how, techniques,

designs, formulae, test data, costs, customer lists, employees, business plans, marketing plans and strategies, pricing, or other subject matter pertaining to any existing or contemplated business of Sun.  At their departure from Sun, the individuals identified above further acknowledged that they continued to be bound by the EPIA.

11.     Upon information and belief, Azul developed products and product strategy based on Sun's innovation rather than its own.  By hiring away key former Sun employees, Azul improperly accessed Sun's technology and plans, which enabled Azul to accelerate introduction of its products to market.

12.     Sun's early recognition and decade-long investment of labor and funding in confidential and proprietary information into what Sun believed to be the future of microprocessor technology also included the acquisition of key technology such as Sun's acquisition of the company Afara on or about July of 2002.  Sun's confidential and proprietary information ("Sun's Trade Secret Information") that is relevant to this action, created through research, obtained through acquisition, and/or developed through labor, includes but is not limited to the following:

a.     Sun's strategy, implementation, and plans around the use and application of speculative locking and transactional memory in its next generation processors.  Cliff Click and Kevin Normoyle had access to this confidential information and related trade secrets while they were employed at Sun.  For example, on May 10, 2002, Kevin Normoyle, and on June 20, 2002, Cliff Click each attended a Sun Proprietary/Need to Know presentation on the SPARC processor roadmap, where business strategy, confidential product plans, and detailed technical specifications were shared and discussed, including Sun's plans to use transactional memory/speculative locking technology in next generation microprocessors.  Cliff Click's and Kevin Normoyle's knowledge of Sun's decision to use this technology, how to apply it to Java,

ANSWER and COUNTERCLAIMS          14

and Sun's plans and methods for implementing it in hardware and software allowed Azul to develop a successful product development plan and to quickly introduce products to market. Upon information and belief, Azul copied Sun's technology and is using both Sun's trade secrets and patented aspects of speculative locking and transactional memory in its hardware optimized for Java.  By way of example, many aspects of Sun's transactional memory design were recast as Azul technology, and included in a presentation that Cliff Click made in his capacity as an Azul employee at the IBM Research Center on September 15-17, 2004;

b.      Sun's micro-architecture technology for connecting multiple processors and other modules on a single chip.  Kevin Normoyle, Paul Koike, and Anup Sharma had access to this confidential information and related trade secrets while each was employed at Sun.  Upon information and belief, Azul's Vega multicore processors utilize Sun's trade secrets including on-chip crossbar, cache/memory controller/function unit partitioning to optimize chip multithreading, and chip physical interconnections;

c.      Sun's on-chip and chip-to-chip coherency algorithms and methods for controlling information flow.  Kevin Normoyle, Paul Koike, and Anup Sharma had access to this trade secret information while they were employed at Sun.  Upon information and belief, Azul's multicore processors run a large number of threads that share a large combined memory that implement Sun's proprietary cache coherency techniques; and

d.      The confidential identity of Sun's channel partners, customers, and partners.  As former executives at Sun, Stephen DeWitt and Shahin Khan had access to Sun's confidential lists of channel partners, customers, and partners.  In the course of performing their duties at Sun, DeWitt and Khan learned about the needs, preferences, desires, and purchasing habits of Sun's customers and partners.  Now, as Azul executives, DeWitt and Khan are marketing Azul products based on Sun innovation to targeted Sun customers and partners.  DeWitt and Khan are

ANSWER and COUNTERCLAIMS          15

in direct violation of their Employee Proprietary Information Agreements prohibiting the unauthorized use of Sun's confidential customer lists, business plans, marketing plans and strategies.

13.     When Sun learned of Azul's use of Sun's confidential business strategy and Azul's plans to develop technology based on Sun's innovations, Sun contacted Azul to discuss its concerns regarding Sun's trade secrets, proprietary information, and patents.  Sun identified technology areas of particular interest to Azul and requested a meeting with Azul to discuss ideas that would permit Azul to continue using Sun's innovations and proprietary technology in its products and business plans.  In response to Sun's request, Sun and Azul eventually met on April 6, 2005.

14.     At the meeting on April 6, 2005, Sun explained its concerns to Azul and provided Azul with a detailed presentation highlighting a number of Sun's concerns.  Sun further offered to negotiate a business resolution of the matter.  Following Sun's presentation, Azul requested a "terms sheet" memorializing Sun's business offer.  On May 2, 2005, Sun provided a first licensing proposal to Azul.  Sun's licensing proposal sought compensation to Sun for Azul's use of Sun's technology, yet at the same time would permit Azul to compete in the marketplace absent unfair gains.

15.     Following the meeting on April 6, 2005, Azul requested further information regarding Sun's trade secrets.  Sun proposed a process for sharing information with Azul regarding certain Sun trade secrets.  To address confidentiality concerns, Sun's proposed process did not involve the use of a third party.  Sun's proposal was designed to protect the parties' confidential information and, at the same time, to allow the parties to directly negotiate a business resolution of the dispute.

ANSWER and COUNTERCLAIMS          16

16.     Sun and Azul met again on May 5, 2005.  At that meeting, the parties discussed possible non-litigation mechanisms for addressing Sun's concerns over Azul's use of Sun's proprietary technology.  Both Sun and Azul suggested possible mechanisms, but the parties did not reach agreement at that time as to a suitable mechanism.  Azul did not provide a response to the "terms sheet" that Sun had provided.

17.     Sun met with Azul again on June 20, 2005.  Prior to the June meeting, Azul offered to provide Sun with detailed product specifications to demonstrate that Azul was not using Sun's trade secrets.  At the meeting, however, Azul refused to discuss the trade secret issues and failed to provide any detailed technical information regarding its products that would allow the parties to move forward the trade secret discussion and resolution.  Azul also continued its refusal to move the licensing discussion forward, refusing to accept the terms of Sun's May 2, 2005 license offer, refusing to propose alternate terms, and refusing even simply to discuss or to negotiate the offer that Sun had put on the table.

18.     On September 13, 2005, Sun and Azul met once again.  At the September meeting, through a series of slides and charts, Sun disclosed a number of its trade secret concerns to Azul.  During this meeting, Sun discussed its trade secret concerns in detail and allowed Azul's representatives time to take copious notes, even pausing several times to allow one Azul representative to finish typing his thoughts and copying down the information that Sun shared.

19.     On November 16, 2005, Sun met with Azul and offered its second proposed business resolution to the dispute.  Growing concerned over Azul's failure to engage in meaningful discussions that would resolve the parties' dispute, Sun requested a prompt response from Azul.

20.     Azul telephoned Sun on December 15, 2005, to indicate that Azul had no specific response to Sun's second proposed business solution.  Rather, Azul indicated that it simply

ANSWER and COUNTERCLAIMS          17

wanted to continue to meet with Sun.  Shortly before Christmas 2005, Azul telephoned again to schedule yet another meeting.

21.     Following Azul's nearly year-long practice of refusing to engage in meaningful negotiations or discussions in response to Sun's several license offers and Azul's refusal to provide any detailed technical information that would demonstrate the inapplicability of any of Sun's intellectual property, on January 18, 2006, Sun sent a letter to Azul proposing a tolling agreement that would allow the parties to continue their discussions independent of the pressure of any statutory deadlines.  Azul subsequently proposed modifications to the agreement which Sun accepted.

22.     On February 1, 2006, Sun met with Azul yet again.  At that meeting, Sun expected Azul to respond to the detailed trade secret concerns that Sun had shown to Azul in September of 2005.  Rather than respond to Sun on the merits, Azul informed Sun that it had affirmatively decided not to respond on any trade secret issues.  Azul indicated that in its view there were no "injunction level" trade secret misappropriation issues, and it asked Sun to bifurcate settlement discussions on the trade secret and patent claims.  Sun also learned from Scott Sellers (one of Azul's founders) that in mid-2002, DeWitt had gone on a camping trip funded by one of Azul's venture capitalists where business discussions around the formation of Azul took place, along with recreational activities (this occurred while DeWitt's non-compete agreement remained in force).  Sun also learned from Scott Sellers that Azul had specifically targeted Sun employees for hiring in the Spring and Summer of 2002.

23.     On or about February 16, 2006, a Sun executive telephoned a member of Azul's board of directors in an attempt to facilitate a more productive dialog between the two companies.  On or about February 17, 2006, in a second telephone call between Sun and Azul, the same Sun executive again expressed interest in working towards a non-litigation solution to

the dispute between Sun and Azul.  During the two calls, the Sun executive sought to foster a mutually-beneficial relationship between Sun and Azul, and proposed a process to move forward with an evaluation of Azul's use of Sun's trade secret information.  Azul agreed to consider Sun's proposal.  The Sun executive further pointed out that Sun had provided a business settlement proposal to Azul three months earlier, in November 2005, but Azul had not responded to Sun's pending proposal.  During both telephone calls, Azul's representatives expressed appreciation as to Sun's willingness to entertain high-level discussions.

24.     On March 8, 2006, Sun again met with Azul.  At that meeting, Sun further discussed with Azul the process that Sun had proposed for investigating Sun's trade secret claims.  In response to input from Azul, Sun agreed to modify the process to include several restrictions relating to access to information, including restrictions on Sun's use of information, the number of employees with access to information, and the use of Azul's outside counsel – not Sun's counsel – to host and facilitate the investigation.  Sun also presented a third settlement proposal to Azul.

25.     On March 9, 2006, Sun provided to Azul a copy of a revised agreement that memorialized the discussions of the previous day on a process to evaluate trade secret information as well as a copy of Sun's most recent settlement proposal.

26.     On March 10, 2006, Azul telephoned Sun to indicate that it would be responding to Sun's most recent settlement proposal, and that it would be providing further comment on the process to facilitate investigation of Sun's trade secret claims.

27.     On March 14, 2006, rather than responding to Sun's proposal to evaluate Azul's use of Sun's trade secrets or to Sun's third licensing proposal, Azul filed suit.

28.     Throughout 2005 and into 2006, Sun negotiated with Azul in good faith to resolve the parties' differences and to protect its technology.  Notwithstanding three specific business

proposals made by Sun that were intended to free up Azul and its products to continue to take advantage of Sun's intellectual property without interruption, Azul refused to respond in any meaningful way.  On the eve of engaging in a meaningful exchange to evaluate Azul's use of Sun's trade secrets, Azul abruptly terminated negotiations by filing the instant declaratory judgment lawsuit against Sun.

29.     Therefore, Sun counterclaims that Azul has misappropriated Sun's trade secret information relating to Sun's business plans and strategy, customer and partner lists, as well as technical information relating at least to the use of speculative locking and transactional memory. Sun also counterclaims against Azul for infringement of specific patents, namely U.S. Patent Nos. 6,862,664; 6,938,130; 6,003,065; 6,901,491; 7,013,454; and 6,823,351.  As to the remaining patents that Azul put at issue in the Complaint, Sun intends to seek discovery from Azul and expressly reserves the right to add infringement allegations directed to some or all of those patents.

## JURISDICTION AND VENUE

30.     This Court has original jurisdiction over the claims asserted herein according to 28 U.S.C. §§ 1331, 1338, as well as supplemental jurisdiction under 28 U.S.C. § 1367(a).

31.     Venue is proper in this judicial district, according to 28 U.S.C. § 1400.

## COUNT I
### (Misappropriation of Sun's Trade Secrets)

32.     Paragraphs 1-31 above are incorporated herein by reference.

33.     As explained above, Sun's Trade Secret Information has great economic value to Sun in that Sun has spent substantial time and money to develop that information.  Sun's Trade

ANSWER and COUNTERCLAIMS            20

Secret Information further has independent economic value because the public or others who could derive economic value from its disclosure or use do not generally know it, and could not obtain it without expenditure of substantial time, effort and expense, if at all.

34.    Sun has made all reasonable efforts to maintain Sun's Trade Secret Information in such a manner as to keep it confidential and from being used in any fashion other than as directed by Sun.  For example, each of the former Sun employees identified above in paragraph 9 signed an Employee Proprietary Information Agreement ("EPIA") when they joined Sun. These employees thereby agreed to keep confidential and not disclose or make use of at any time (including during their subsequent employment at Azul) any Sun trade secrets or confidential or proprietary information.

35.    Azul misappropriated Sun's Trade Secret Information through the targeted hiring of at least the Sun employees identified above in paragraph 9, among other ways.  These Azul employees acquired knowledge of Sun's Trade Secret Information while employed at Sun, with a duty to maintain its secrecy or limit its use.  These employees reconfirmed in writing their duty of confidentiality to Sun as described in the EPIA before they left to subsequently to join Azul.

36.    Azul is inappropriately using Sun's Trade Secret Information by, *inter alia*, the acts described hereinabove in violation of California Civil Code §§ 3426, *et seq.*  This information is not generally known in the business or industry and/or was not known at the time of Azul's misappropriation.

37.    Azul acted willfully and maliciously in misappropriating Sun's Trade Secret Information, with knowledge of the proprietary nature of Sun's Trade Secret Information.  For example, Cliff Click attended a Sun Proprietary/Need to Know presentation on the SPARC processor roadmap where Sun's plans to use transactional memory/speculative locking technology in next generation microprocessors was discussed.  After Cliff Click joined Azul, he

presented at the IBM Research Center many aspects of Sun's transactional memory design that were recast as Azul technology.

38.     Sun will suffer irreparable harm – including the misappropriation and loss of sensitive and valuable trade secrets, and the resulting competitive disadvantage in the marketplace – in the absence of a permanent injunction.  The irreparable harm to Sun outweighs any potential harm to Azul.  For example while employed at Sun, Stephen DeWitt (Vice President and General Manager of Content Delivery and Edge Computing) and Shahin Khan (Vice President of High Performance Computing) had access to confidential Sun channel partner, customer, and partner lists.  Now as Azul executives, DeWitt (President and Chief Executive Officer) and Khan (Vice President and Chief Marketing Officer) are marketing Azul products based on Sun innovation to targeted Sun customers and partners.  DeWitt and Khan are using their knowledge of Sun's customer and partner needs, preferences, desires, and purchasing habits learned in the course of performing their duties at Sun to put Sun at a competitive disadvantage in the marketplace.  DeWitt and Khan are in direct violation of their Employee Proprietary Information Agreements prohibiting the use of Sun's trade secrets including, but not limited to, customer lists, business plans, marketing plans and strategies.

39.     Sun is entitled to damages at least in the amount of its actual harm and in the amount by which Azul has been unjustly enriched by its wrongful actions.  Sun is also entitled to exemplary and punitive damages because Azul acted intentionally and maliciously.

## COUNT II
### (Infringement of the '664 Patent)

40.     Paragraphs 1-31 above are incorporated herein by reference.

41.     Sun is the owner of all right, title, and interest in United States Patent No. 6,862,664 ("the '664 patent") entitled "Method and Apparatus for Avoiding Locks by Speculatively Executing Critical Sections."  The '664 patent issued on March 1, 2005.  A true and correct copy of the '664 patent is attached as <u>Exhibit A</u>.

42.     The '664 patent is directed to transactional memory.

43.     Azul has infringed and is continuing to infringe the claims of the '664 patent in its manufacture, use, sale, offer for sale, importation of network attached processing systems that use transactional memory, and by inducing others to sell and/or use such systems.

44.     Sun gave Azul actual notice of infringement of the '664 patent during a presentation given on April 6, 2005.

45.     Upon information and belief, Azul's infringement of the '664 patent has been willful and deliberate since at least April 6, 2005.

46.     Sun has been damaged by such infringement, and unless enjoined by this Court, Azul will continue its infringing activity.


### COUNT III
### (Infringement of the '130 Patent)

47.     Paragraphs 1-31 above are incorporated herein by reference.

48.     Sun is the owner of all right, title, and interest in United States Patent No. 6,938,130 ("the '130 patent") entitled "Method and Apparatus for Delaying Interfering Accesses from Other Threads during Transactional Program Execution."  The '130 patent issued on August 30, 2005.  A true and correct copy of the '130 patent is attached as <u>Exhibit B</u>.

49.     The '130 patent is directed to transactional memory.

ANSWER and COUNTERCLAIMS          23

50.     Azul has infringed and is continuing to infringe the claims of the '130 patent in its manufacture, use, sale, offer for sale, importation of network attached processing systems that use transactional memory, and by inducing others to sell and/or use such systems.

51.     Sun gave Azul actual notice of infringement of the '130 patent during a presentation given on September 13, 2005.

52.     Upon information and belief, Azul's infringement of the '130 patent has been willful and deliberate since at least September 13, 2005.

53.     Sun has been damaged by such infringement, and unless enjoined by this Court, Azul will continue its infringing activity.

## COUNT IV
### (Infringement of the '065 Patent)

54.     Paragraphs 1-31 above are incorporated herein by reference.

55.     Sun is the owner of all right, title and interest in United States Patent No. 6,003,065 ("the '065 patent") entitled "Method and System for Distributed Processing of Applications on Host and Peripheral Devices."  The '065 patent issued on December 14, 1999. A true and correct copy of the '065 patent is attached as Exhibit C.

56.     The '065 patent is directed to a distributed data processing system.

57.     Azul has infringed and is continuing to infringe the claims of the '065 patent in its manufacture, use, sale, offer for sale, importation of network attached processing systems, and by inducing others to sell and/or use such systems.

58.     Sun gave Azul actual notice of infringement of the '065 patent during a presentation given on February 1, 2006.

ANSWER and COUNTERCLAIMS          24

59.     Upon information and belief, Azul's infringement of the '065 patent has been willful and deliberate since at least February 1, 2006.

60.     Sun has been damaged by such infringement, and unless enjoined by this Court, Azul will continue its infringing activity.

## COUNT V
### (Infringement of the '491 Patent)

61.     Paragraphs 1-31 above are incorporated herein by reference.

62.     Sun is the owner of all right, title and interest in United States Patent No. 6,901,491 ("the '491 patent") entitled "Method and Apparatus for Integration of Communication Links with a Remote Direct Memory Access Protocol."  The '491 patent issued on May 31, 2005.  A true and correct copy of the '491 patent is attached as Exhibit D.

63.     The '491 patent is directed to a communication system for a multi-chip processor.

64.     Azul has infringed and is continuing to infringe the claims of the '491 patent in its manufacture, use, sale, offer for sale, importation of network attached processing systems that use multi-core processors, and by inducing others to sell and/or use such systems.

65.     Sun gave Azul actual notice of the '491 patent during a presentation given on September 13, 2005.

66.     Upon information and belief, Azul's infringement of the '491 patent has been willful and deliberate since at least September 13, 2005.

67.     Sun has been damaged by such infringement, and unless enjoined by this Court, Azul will continue its infringing activity.

ANSWER and COUNTERCLAIMS            25

## COUNT VI

### (Infringement of the '454 Patent)

68.     Paragraphs 1-31 above are incorporated herein by reference.

69.     Sun is the owner of all right, title and interest in United States Patent No. 7,013,454 ("the '454 patent") entitled "Thread Suspension System and Method Using Trapping Instructions." The '454 patent issued on March 14, 2006. A true and correct copy of the '454 patent is attached as Exhibit E.

70.     The '454 patent is directed to techniques for facilitating garbage collection in software environments.

71.     Azul has infringed and is continuing to infringe the claims of the '454 patent in its manufacture, use, sale, offer for sale, importation of network attached processing systems that implement garbage collection, and by inducing others to sell and/or use such systems.

72.     Sun gave Azul notice of the allowed claims of Patent Application No. 09/986,231, which issued as the '454 patent, during a presentation given on February 1, 2006.

73.     Upon information and belief, Azul's infringement of the '454 patent has been willful and deliberate since at least March 14, 2006.

74.     Sun has been damaged by such infringement, and unless enjoined by this Court, Azul will continue its infringing activity.

## COUNT VII

### (Infringement of the '351 Patent)

75.     Paragraphs 1-31 above are incorporated herein by reference.

76.     Sun is the owner of all right, title and interest in United States Patent No. 6,823,351 ("the '351 patent") entitled "Work-Stealing Queues for Parallel Garbage Collection."

The '351 patent issued on November 23, 2004. A true and correct copy of the '351 patent is attached as Exhibit F.

77.     The '351 patent is directed to techniques for implementing work stealing in parallel garbage collectors.

78.     Azul has infringed and is continuing to infringe the claims of the '351 patent in its manufacture, use, sale, offer for sale, importation of network attached processing systems that implement work stealing in parallel garbage collection, and by inducing others to sell and/or use such systems.

79.     Sun has been damaged by such infringement, and unless enjoined by this Court, Azul will continue its infringing activity.

WHEREFORE, Sun requests that the Court:

A.     As to Count I for the Misappropriation of Sun's Trade Secrets:

i.     Award damages in an amount to be proven at trial;

ii.     Award exemplary and punitive damages in an amount sufficient to punish Azul and deter similar conduct in the future;

iii.     Enter a judgment for a permanent injunction ordering Azul to cease and desist from its wrongful conduct;

iv.     Enter an order and permanent injunction requiring such affirmative acts as are appropriate to protect Sun's trade secrets;

v.     Award Sun its attorneys' fees pursuant to California Civil Code § 3426.4;

vi.     Award Sun its costs of suit; and

vii.     Award such other relief as is available under statute and as the Court deems proper.

ANSWER and COUNTERCLAIMS          27

B.      Enter a judgment that Azul has infringed the '664, '130, '065, '491, '454, and '351 patents ("Counterclaim Patents-in-Suit") in violation of 35 U.S.C. § 271;

C.      Enter an injunction against Azul's continued infringement of the Counterclaim Patents-in-Suit;

D.      Award Sun its damages pursuant to 35 U.S.C. § 284, including damages for Azul's willful infringement of the Counterclaim Patents-in-Suit;

E.      Find that Sun is the prevailing party in this action and that this is an exceptional case as defined in 35 U.S.C. § 285, and award Sun its reasonable attorney fees as allowed thereunder;

F.      Enter a judgment against Azul and award Sun damages for the gains, profits, and advantages derived by Azul, directly or indirectly, by its unlawful acts, in an amount adequate to compensate Sun for its monetary damages and/or for loss of or damage to its reputation and goodwill, resulting from the wrongful conduct of Azul, together with costs and interest;

G.      Award Sun its costs and pre-judgment and post-judgment interest; and

H.      Award such other relief to Sun as this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Sun demands a trial by jury on all issues so triable.

/ /

/ /

/ /

ANSWER and COUNTERCLAIMS                28

1   Dated:  May 3, 2006

2                                          By:      **/s/ *Henry C. Bunsow***
                                                     Henry C. Bunsow (State Bar No. 60707)
3                                                    HOWREY LLP
                                                     525 Market Street, Suite 3600
4                                                    San Francisco, CA  94105
                                                     Telephone:  (415) 848-4900
5                                                    Facsimile:   (415) 848-4999
                                                     E-Mail:  BunsowH@howrey.com
6
                                                     Thomas M. Dunham (*pro hac vice*)
7                                                    Nelson M. Kee (*pro hac vice*)
                                                     HOWREY LLP
8                                                    1299 Pennsylvania Avenue, NW
                                                     Washington, DC  20004
9                                                    Telephone:  (202) 783-0800
                                                     Facsimile:   (202) 383-6610
10                                                   E-Mail:  DunhamT@howrey.com
                                                     E-Mail:  KeeN@howrey.com
11
12                                                   Attorneys for Defendant
                                                     SUN MICROSYSTEMS, INC.
13

14

15

16                              CERTIFICATE OF SERVICE

17          I hereby certify that all counsel of record, who are deemed to have consented to

18  electronic service are being served this 3rd day of May, 2006, with a copy of this document via

19  the Court's CM/ECF system.  Any other counsel of record will be served by electronic mail,

20  facsimile transmission and/or first class mail on this same date.

21

22                                          __/s/ Henry C. Bunsow_____
                                                     Henry C. Bunsow
23

24

25

26

27

28
ANSWER and COUNTERCLAIMS          29