1   Henry C. Bunsow (State Bar No. 60707)
    Benjamin K. Riley (State Bar No. 112007)
2   HOWREY LLP
3   525 Market Street, Suite 3600
    San Francisco, CA  94105-2708
4   Telephone:  (415) 848-4900
    Facsimile:  (415) 848-4999
5
6   Thomas M. Dunham (*pro hac vice*)
    Nelson M. Kee (*pro hac vice*)
7   HOWREY LLP
    1299 Pennsylvania Avenue, N.W.
8   Washington, DC  20004
    Telephone:  (202) 783-0800
9   Facsimile:  (202) 383-6610

10  Attorneys for Defendant and Counterclaim Plaintiff
11  SUN MICROSYSTEMS, INC.

12          IN THE UNITED STATES DISTRICT COURT
13      FOR THE NORTHERN DISTRICT OF CALIFORNIA
                    SAN JOSE DIVISION
14

15  AZUL SYSTEMS, INC.,                          )
                                                 )
16      Plaintiff and Counterclaim Defendant,    )   Case No. C 06-01988 (CRB) EMC
                                                 )
17      v.                                       )   **SUN MICROSYSTEMS' SECOND**
                                                 )   **AMENDED ANSWER AND**
18  SUN MICROSYSTEMS, INC.,                      )   **COUNTERCLAIMS**
                                                 )
19      Defendant and Counterclaim Plaintiff.    )   **JURY TRIAL DEMANDED**
                                                 )
20  _____  )

21

22          Sun Microsystems, Inc. ("Sun") hereby answers the corresponding paragraphs of Azul

23  Systems, Inc.'s ("Azul") First Amended Complaint for Declaratory Judgment ("Amended

24  Complaint"), and in so doing denies the allegations of the Amended Complaint except as

25  specifically admitted below.

26          1.      Sun admits that Azul invokes 28 U.S.C. §§ 2201 and 2202 and that Azul seeks a

27  declaratory judgment against Sun.  Sun also admits that a justiciable controversy exists in this

28  case as to U.S Patent Nos. 6,003,065; 6,823,351; 6,862,664; 6,901,491; 6,938,130; and

                                       1        SUN'S SECOND AMENDED ANSWER
                                                     AND COUNTERCLAIMS
                                                (Case No. C 06-01988 (CRB) EMC)

7,013,454.  Additionally, pursuant to the Court's January 22, 2007 order granting Sun's Motion For Leave to Amend Counterclaims, Sun admits that a justiciable controversy exists in this case as to U.S Patent Nos. 6,408,383; 6,542,990; and 6,892,295.  Sun denies the remaining allegations in paragraph 1 of the Amended Complaint.

2.   Sun admits that Azul invokes 28 U.S.C. §§ 2201 and 2202 as to misappropriation of trade secrets in violation of California state law and that Azul seeks a declaratory judgment against Sun.  Sun denies the remaining allegations in paragraph 2 of the Amended Complaint.

**PARTIES**

3.   Sun lacks information sufficient to admit or deny this paragraph and therefore denies each and every allegation in paragraph 3 of the Amended Complaint.

4.   Sun admits the allegations in paragraph 4 of the Amended Complaint.

**JURISDICTION AND VENUE**

5.   Sun admits that this Court has jurisdiction over this action.

6.   Sun admits that venue is proper in this judicial district and division.

**GENERAL ALLEGATIONS**

7.   Sun admits the allegations in paragraph 7 of the Amended Complaint.

8.   Sun admits that it met with Azul for over a year in an attempt to negotiate a license with Azul.  Sun denies the remaining allegations in paragraph 8 of the Amended Complaint.

9.   Sun admits that it met with Azul on April 6, 2005. Sun admits that it pointed out that certain employees of Azul are former employees of Sun with continuing duties not to disclose Sun trade secrets and confidential information, and that Sun was concerned that Sun's proprietary and confidential information was being incorporated into Azul's products without Sun's authorization.  Sun admits that it emphasized its commitment to innovation as evidenced for example by its patent portfolio of over 4,500 United States Patents.  Sun admits that it alleged that Azul was, or was likely to be, infringing the '664 patent.  Sun denies the remaining allegations of paragraph 9 of the Amended Complaint.

10.   Sun admits that Azul asked Sun to clarify the nature of its trade secret claims.

2

SUN'S SECOND AMENDED ANSWER
AND COUNTERCLAIMS
(Case No. C 06-01988 (CRB) EMC)

1  Sun denies that it has never done so.  By way of example, during a September 13, 2005 meeting,

2  Sun provided details of its trade secret concerns to Azul.  Sun denies the remaining allegations in

3  paragraph 10 of the Amended Complaint.

4        11.    Sun denies that it refused every non-litigation option with regards to trade secrets

5  because even Azul admitted that its suggestions were unworkable.  In fact, Sun had accepted in

6  concept a mechanism proposed by Azul for resolution of the trade secret issues, pending a few

7  process revisions requested by Sun.  This proposal was pending Azul's final approval when Azul

8  instead filed the instant action.  Sun admits that that it sent a letter dated May 16, 2005 to Azul

9  questioning the value of, and the need for, the services of a mediator or independent auditor to

10  uncover evidence of Azul's misuse of Sun's trade secrets and technology when Azul's own

11  company literature already clearly referenced fundamental Sun technology and numerous

12  industry analysts had mentioned how the technology was first explored by Sun.  Sun denies the

13  remaining allegations of paragraph 11 of the Amended Complaint.

14        12.    Sun admits that it developed a list of trade secrets and that it expressed genuine

15  concern that Azul had misappropriated and misused Sun's trade secrets in Azul's design and

16  development and design of its business and products.  Sun further admits that it provided the

17  contents of its trade secret list to Azul at least during a meeting on September 13, 2005, in an

18  effort to help Azul move the discussions meaningfully forward.  Sun denies that it refused to

19  disclose any of its trade secrets to Azul, thereby producing an apprehension of suit.  Sun further

20  denies the remaining allegations in paragraph 12 of the Amended Complaint.

21        13.    In response to paragraph 13 of the Amended Complaint, Sun admits that it met

22  with Azul on September 13, 2005, and that it accused Azul of infringing or likely preparing to

23  infringe the '130 patent.

24        14.    Sun admits the allegations in paragraph 14 of the Amended Complaint.

25        15.    Sun admits the allegations in paragraph 15 of the Amended Complaint.

26        16.    Sun admits that on or about February 16, 2006, a Sun executive telephoned a

27  member of Azul's board of directors.  Sun denies Azul's characterization of that call, as Sun

28  placed the call in an attempt to establish high-level communications that might advance

3

SUN'S SECOND AMENDED ANSWER
AND COUNTERCLAIMS
(Case No. C 06-01988 (CRB) EMC)

1   resolution of the dispute between the two companies.  Sun also admits that on or about February

2   17, 2006, Sun and Azul again spoke by telephone.  Sun likewise denies Azul's characterization

3   of the second call, as the discussion centered on mechanisms for advancing discussions between

4   Sun and Azul as an alternative to litigation.  Sun denies the remaining allegations in paragraph

5   16 of the Amended Complaint.

6         17.     Sun admits that it met with Azul on March 8, 2006.  Sun denies the remaining

7   allegations in paragraph 17 of the Amended Complaint.

8         18.     Sun admits that Azul has been unwilling to reach agreement with Sun as to Sun's

9   allegations of trade secret misappropriation and patent infringement.  Sun denies the remaining

10  allegations in paragraph 18 of the Amended Complaint.

11        19.     Sun denies the allegations in paragraph 19 of the Amended Complaint.

12        20.     In response to paragraph 20 of the Amended Complaint, Sun admits that on May

13  3, 2006, Sun filed a Counterclaim for infringement of each of the Sun Patents.  Sun also filed a

14  Counterclaim for infringement of the '351 Patent, which had not been previously identified by

15  Sun to Azul.

16        21.     Sun admits that an actual, substantial and continuing justiciable controversy exists

17  with Azul regarding Azul's infringement of U.S. Patent Nos. 6,003,065; 6,823,351; 6,862,664;

18  6,901,491; 6,938,130; and 7,013,454.  Additionally, pursuant to the Court's January 22, 2007

19  order granting Sun's Motion For Leave to Amend Counterclaims, Sun admits that an actual,

20  substantial and continuing justiciable controversy exists in this case as to U.S Patent Nos.

21  6,408,383; 6,542,990; and 6,892,295.  Sun further admits that an actual, substantial and

22  continuing justiciable controversy exists regarding Azul's misappropriation and use of Sun's

23  trade secrets.  Sun denies the remaining allegations of paragraph 21 of the Amended Complaint.

24                   **FIRST CLAIM FOR RELIEF**

25              **Declaratory Relief – '664 Patent**

26        22.     Sun hereby incorporates its response to paragraphs 1-21 above as if fully set forth

27  herein.

28        23.     Sun admits that Azul seeks a declaration that no device made, used, sold, or

SUN'S SECOND AMENDED ANSWER
AND COUNTERCLAIMS
(Case No. C 06-01988 (CRB) EMC)

DM_US\8421271.v1

offered for sale by Azul uses the '664 Patent and/or that it is invalid and/or unenforceable, but

denies the remaining allegations in paragraph 23 of the Amended Complaint.

## SECOND CLAIM FOR RELIEF

### Declaratory Relief – '130 Patent

24.    Sun hereby incorporates its response to paragraphs 1-21 above as if fully set forth

herein.

25.    Sun admits that Azul seeks a declaration that no device made, used, sold, or

offered for sale by Azul uses the '130 Patent and/or that it is invalid and/or unenforceable, but

denies the remaining allegations in paragraph 25 of the Amended Complaint.

## THIRD CLAIM FOR RELIEF

### Declaratory Relief – '065 Patent

26.    Sun hereby incorporates its response to paragraphs 1-21 above as if fully set forth

herein.

27.    Sun admits that Azul seeks a declaration that no device made, used, sold, or

offered for sale by Azul uses the '065 Patent and/or that it is invalid and/or unenforceable, but

denies the remaining allegations in paragraph 27 of the Amended Complaint.

## FOURTH CLAIM FOR RELIEF

### Declaratory Relief – '491 Patent

28.    Sun hereby incorporates its response to paragraphs 1-21 above as if fully set forth

herein.

29.    Sun admits that Azul seeks a declaration that no device made, used, sold, or

offered for sale by Azul uses the '491 Patent and/or that it is invalid and/or unenforceable, but

denies the remaining allegations in paragraph 29 of the Amended Complaint.

## FIFTH CLAIM FOR RELIEF

### Declaratory Relief – '454 Patent

30.    Sun hereby incorporates its response to paragraphs 1-21 above as if fully set forth

herein.

31.    Sun admits that Azul seeks a declaration that no device made, used, sold, or

SUN'S SECOND AMENDED ANSWER
AND COUNTERCLAIMS
(Case No. C 06-01988 (CRB) EMC)

DM_US\8421271.v1

1    offered for sale by Azul uses the '454 Patent and/or that it is invalid and/or unenforceable, but

2    denies the remaining allegations in paragraph 31 of the Amended Complaint.

3                          **SIXTH CLAIM FOR RELIEF**

4                      **Declaratory Relief – '351 Patent**

5            32.    Sun hereby incorporates its response to paragraphs 1-21 above as if fully set forth

6    herein.

7            33.    Sun admits that Azul seeks a declaration that no device made, used, sold, or

8    offered for sale by Azul uses the '454 Patent and/or that it is invalid and/or unenforceable, but

9    denies the remaining allegations in paragraph 33 of the Amended Complaint.

10                        **SEVENTH CLAIM FOR RELIEF**

11                     **Declaratory Relief – Trade Secrets**

12           34.    Sun hereby incorporates its response to paragraphs 1-21 above as if fully set forth

13   herein.

14           35.    Sun admits that Azul seeks a declaration that it has not directly or indirectly

15   misappropriated or converted any Sun trade secrets, but denies the remaining allegations of

16   paragraph 35 of the Amended Complaint.

17                 **SUN'S SECOND AMENDED COUNTERCLAIMS[1]**

18           1.    Sun is recognized as an innovator and leader in computer and internet-related

19   technologies including servers and distributed processing systems incorporating multi-core

20   processors, Java programming language and the acceleration of Java applications, and memory

21   management including garbage collection, array access bounds checking, and transactional

22   memory. Sun's commitment to innovation has fostered and continues to foster significant

23   advances in technology. Sun stays ahead of its competition by reinvesting as much as 25% of its

24   net product revenues into research and development annually -- nearly $2 billion in FY 2005 --

25   and has been awarded hundreds of patents covering various aspects of these technologies. Along

26   with building new technologies, Sun also shares its innovations with the community, under terms

27

28   ---
     [1] Sun reserves the right to assert additional defenses and/or counterclaims (*e.g.*, Tortious Interference with
     Prospective Business Advantage) as discovery progresses and additional facts are developed.

1   that promote adoption and innovation.  For example, Sun released its UltraSPARC TI processor

2   design to the open-source community under the GNU General Public License.  Nevertheless as

3   explained below, Azul has resorted to the misappropriation of Sun's trade secrets.

4         2.     In the course of its business, Sun has invested years of labor and billions of dollars

5   in the development of its confidential and proprietary information.

6         3.     Sun has used and continues to use a variety of means to protect its confidential

7   information, including the use of appropriate confidentiality and employment agreements and

8   corporate policies, training courses, restrictions permitting access to the information on a "need-

9   to-know" basis, records management processes, and password protections.

10        4.     In 2000, Sun purchased server appliance maker Cobalt Networks, Inc. ("Cobalt")

11  for approximately $2 billion.

12        5.     In connection with Sun's purchase of Cobalt, Cobalt CEO Stephen DeWitt

13  ("DeWitt") became an employee of Sun and entered into a non-compete agreement which was

14  effective beginning December 12, 2000.  Sun conditioned its purchase of Cobalt, and the hiring

15  of DeWitt, on DeWitt's acceptance of the non-compete agreement.  Under the terms of the

16  agreement, DeWitt promised not to engage in competitive business activity related to computer

17  systems and servers, including appliance servers, or to solicit employees to leave Sun for two full

18  years from the effective date of the non-compete agreement.

19        6.     Upon information and belief, incident to Sun's purchase of Cobalt, DeWitt was

20  extremely well compensated and acquired stock valued at approximately $100 million.

21  Notwithstanding this extraordinary compensation, DeWitt failed to abide by the basic terms of

22  his employment agreement and by the terms of his non-compete and non-solicitation agreement

23  with Sun.

24        7.     Upon information and belief, Azul was formed in 2002 and makes network

25  attached processing systems to accelerate Java applications.  Azul offers to sell and sells its

26  products in the marketplace in competition with Sun's server products.

27        8.     Upon information and belief, DeWitt left Sun in May of 2002.  Notwithstanding

28  the fact that his covenant not to compete with Sun was still fully in force, by June of 2002

1   DeWitt was in talks with Azul and became Azul's Chief Executive Officer at least as early as

2   October 2002.  DeWitt was and remains instrumental in the direction-setting and operations of

3   Azul.

4          9.      Upon information and belief, many key Azul employees are former Sun

5   employees who now work on the same or substantially similar technology as they did when at

6   Sun.  A number of Sun employees left Sun to join Azul at or around the same time that DeWitt

7   joined Azul.  Upon information and belief, these employees were specifically targeted for

8   recruiting by Azul.  Certain notable former Sun employees who went to Azul include:

9          a.      DeWitt, who was Vice President and General Manager of Content Delivery and

10  Edge Computing at Sun and is now President and Chief Executive Officer at Azul;

11         b.      Shahin Khan, who was Vice President of High Performance Computing at Sun

12  and is now Vice President and Chief Marketing Officer at Azul;

13         c.      Kevin Normoyle, who was a SPARC Processor Architect at Sun and was the

14  Chief Architect at Azul;

15         d.      Cliff Click, who was a Senior Staff Engineer at Sun and is now a Senior Staff

16  Engineer at Azul;

17         e.      Paul Koike, who joined Sun as part of its acquisition of Afara (described in

18  Paragraph 12, below) as Director of Physical Design at Sun and who left shortly thereafter to

19  become the Director of Silicon Technology at Azul;

20         f.      Anup Sharma, who joined Sun as part of its acquisition of Afara as a member of

21  the Afara and Niagara Development teams at Sun and who left shortly thereafter for employment

22  in a similar capacity at Azul;

23         g.      David Murata, who was a Physical Circuit Designer at Sun and is now employed

24  in a similar capacity at Azul;

25         h.      James McIlree, who was a Senior Staff Designer in the "Hot Spot" Group at Sun

26  and was employed in a similar capacity at Azul;

27         i.      John Staten, who was a Marketing Director and Storage Strategist at Sun and is

28  now employed in a similar capacity at Azul; and

j.      John (Jack) O'Brien, who was a Distinguished Engineer in Java Identity and Systems Software at Sun and is now employed in a similar capacity at Azul.

10.      As a condition of employment at Sun, each of the individuals identified in Paragraph 9 above agreed to and was bound by an Employee Proprietary Information Agreement ("EPIA"), whereby they agreed in writing to keep confidential and to not disclose or make use of, except for the benefit of Sun, at any time either during or subsequent to their employment with Sun, any trade secrets or confidential information of Sun, including but not limited to knowledge, data, or other information relating to products, processes, know-how, techniques, designs, formulae, test data, business plans, marketing plans and strategies, or other subject matter pertaining to any existing or contemplated business of Sun.  At their departure from Sun, the individuals identified above further acknowledged that they continued to be bound by the EPIA.

11.      Upon information and belief, Azul developed products and product strategy based on Sun's innovation rather than its own.  By hiring away key former Sun employees, Azul improperly accessed Sun's technology and plans, which enabled Azul to accelerate introduction of its products to market.

12.      Sun's early recognition and decade-long investment of labor and funding in confidential and proprietary information into what Sun believed to be the future of microprocessor technology also included the acquisition of key technology such as Sun's acquisition of the company Afara on or about July of 2002.  Sun's confidential and proprietary information ("Sun's Trade Secret Information") that is relevant to this action, created through research, obtained through acquisition, and/or developed through labor, includes but is not limited to the following:

a.      Sun's strategy, implementation, and plans around the use and application of speculative locking and transactional memory in its next generation processors.  Cliff Click and Kevin Normoyle had access to this confidential information and related trade secrets while they were employed at Sun.  For example, on May 10, 2002, Kevin Normoyle, and on June 20, 2002, Cliff Click each attended a Sun Proprietary/Need to Know presentation on the SPARC processor roadmap, where business strategy,

SUN'S SECOND AMENDED ANSWER
AND COUNTERCLAIMS
(Case No. C 06-01988 (CRB) EMC)

confidential product plans, and detailed technical specifications were shared and discussed, including Sun's plans to use transactional memory/speculative locking technology in next generation microprocessors.  Cliff Click's and Kevin Normoyle's knowledge of Sun's decision to use this technology, how to apply it to Java, and Sun's plans and methods for implementing it in hardware and software allowed Azul to develop a successful product development plan and to quickly introduce products to market. Upon information and belief, Azul copied Sun's technology and is using both Sun's trade secrets and patented aspects of speculative locking and transactional memory in its hardware optimized for Java.  By way of example, many aspects of Sun's transactional memory design were recast as Azul technology, and included in a presentation that Cliff Click made in his capacity as an Azul employee at the IBM Research Center on September 15-17, 2004;

      b.    Sun's micro-architecture technology for connecting multiple processors and other modules on a single chip.  Kevin Normoyle, Paul Koike, and Anup Sharma had access to this confidential information and related trade secrets while each was employed at Sun.  Upon information and belief, Azul's Vega multicore processors utilize Sun's trade secrets including on-chip crossbar, cache/memory controller/function unit partitioning to optimize chip multithreading, and chip physical interconnections; and

      c.    Sun's on-chip and chip-to-chip coherency algorithms and methods for controlling information flow.  Kevin Normoyle, Paul Koike, Anup Sharma, Vincent Lam, and David Murata had access to this trade secret information while they were employed at Sun.  Upon information and belief, Azul's multicore processors run a large number of threads that share a large combined memory that implement Sun's proprietary cache coherency techniques.

13.    When Sun learned of Azul's use of Sun's confidential business strategy and Azul's plans to develop technology based on Sun's innovations, Sun contacted Azul to discuss its concerns regarding Sun's trade secrets, proprietary information, and patents.  Sun identified technology areas of particular interest to Azul and requested a meeting with Azul to discuss ideas

SUN'S SECOND AMENDED ANSWER
AND COUNTERCLAIMS
(Case No. C 06-01988 (CRB) EMC)

DM_US\8421271.v1

1    that would permit Azul to continue using Sun's innovations and proprietary technology in its

2    products and business plans.  In response to Sun's request, Sun and Azul eventually met on April

3    6, 2005.

4          14.    At the meeting on April 6, 2005, Sun explained its concerns to Azul and provided

5    Azul with a detailed presentation highlighting a number of Sun's concerns.  Sun further offered

6    to negotiate a business resolution of the matter.  Following Sun's presentation, Azul requested a

7    "terms sheet" memorializing Sun's business offer.  On May 2, 2005, Sun provided a first

8    licensing proposal to Azul.  Sun's licensing proposal sought compensation to Sun for Azul's use

9    of Sun's technology, yet at the same time would permit Azul to compete in the marketplace

10   absent unfair gains.

11         15.    Following the meeting on April 6, 2005, Azul requested further information

12   regarding Sun's trade secrets.  Sun proposed a process for sharing information with Azul

13   regarding certain Sun trade secrets.  To address confidentiality concerns, Sun's proposed process

14   did not involve the use of a third party.  Sun's proposal was designed to protect the parties'

15   confidential information and, at the same time, to allow the parties to directly negotiate a

16   business resolution of the dispute.

17         16.    Sun and Azul met again on May 5, 2005.  At that meeting, the parties discussed

18   possible non-litigation mechanisms for addressing Sun's concerns over Azul's use of Sun's

19   proprietary technology.  Both Sun and Azul suggested possible mechanisms, but the parties did

20   not reach agreement at that time as to a suitable mechanism.  Azul did not provide a response to

21   the licensing proposal "terms sheet" that Sun had provided.

22         17.    Sun met with Azul again on June 20, 2005.  Prior to the June meeting, Azul

23   offered to provide Sun with detailed product specifications to demonstrate that Azul was not

24   using Sun's trade secrets.  At the meeting, however, Azul refused to discuss the trade secret

25   issues and failed to provide any detailed technical information regarding its products that would

26   allow the parties to move forward the trade secret discussion and resolution.  Azul also continued

27   its refusal to move the licensing discussion forward, refusing to accept the terms of Sun's May 2,

28   2005 license offer, refusing to propose alternative terms, and refusing to even simply discuss or

                                             11                 SUN'S SECOND AMENDED ANSWER
                                                                    AND COUNTERCLAIMS
                                                                 (Case No. C 06-01988 (CRB) EMC)

1  negotiate the offer that Sun had put on the table.

2      18.     On September 13, 2005, Sun and Azul met once again.  At the September

3  meeting, through a series of slides and charts, Sun disclosed a number of its trade secret concerns

4  to Azul.  During this meeting, Sun discussed its trade secret concerns in detail and allowed

5  Azul's representatives time to take copious notes, even pausing several times to allow one Azul

6  representative to finish typing his thoughts and copying down the information that Sun shared.

7      19.     On November 16, 2005, Sun met again with Azul and offered its second proposed

8  business resolution to the dispute.  Growing concerned over Azul's failure to engage in

9  meaningful discussions that would resolve the parties' dispute, Sun requested a prompt response

10  from Azul.

11     20.     Azul telephoned Sun on December 15, 2005, to indicate that Azul had no specific

12  response to Sun's second proposed business solution.  Rather, Azul indicated that it simply

13  wanted to continue to meet with Sun.  Shortly before Christmas 2005, Azul telephoned again to

14  schedule yet another meeting.

15     21.     Following Azul's nearly year-long practice of refusing to engage in meaningful

16  negotiations or discussions in response to Sun's several license offers and Azul's refusal to

17  provide any detailed technical information that would demonstrate the inapplicability of any of

18  Sun's intellectual property, on January 18, 2006, Sun sent a letter to Azul proposing a tolling

19  agreement that would allow the parties to continue their discussions independent of the pressure

20  of any statutory deadlines.  Azul subsequently proposed modifications to the agreement which

21  Sun accepted.

22     22.     On February 1, 2006, Sun met with Azul yet again.  At that meeting, Sun expected

23  Azul to respond to the detailed trade secret concerns that Sun had shown to Azul in September of

24  2005.  Rather than respond to Sun on the merits, Azul informed Sun that it had affirmatively

25  decided not to respond on any trade secret issues.  Azul indicated that in its view there were no

26  "injunction level" trade secret misappropriation issues, and it asked Sun to bifurcate settlement

27  discussions on the trade secret and patent claims.  Sun also learned from Scott Sellers (one of

28  Azul's founders) that in mid-2002, DeWitt had gone on a camping trip funded by one of Azul's

12                          SUN'S SECOND AMENDED ANSWER
                            AND COUNTERCLAIMS
                            (Case No. C 06-01988 (CRB) EMC)

1   venture capitalists where business discussions around the formation of Azul took place, along

2   with recreational activities (this occurred while DeWitt's non-compete agreement remained in

3   force). Sun also learned from Scott Sellers that Azul had specifically targeted Sun employees for

4   hiring in the Spring and Summer of 2002.

5       23.     On or about February 16, 2006, a Sun executive telephoned a member of Azul's

6   board of directors in an attempt to facilitate a more productive dialog between the two

7   companies. On or about February 17, 2006, in a second telephone call between Sun and Azul,

8   the same Sun executive again expressed interest in working towards a non-litigation solution to

9   the dispute between Sun and Azul. During the two calls, the Sun executive sought to foster a

10  mutually-beneficial relationship between Sun and Azul, and proposed a process to move forward

11  with an evaluation of Azul's use of Sun's trade secret information. Azul agreed to consider

12  Sun's proposal. The Sun executive further pointed out that Sun had provided a business

13  settlement proposal to Azul three months earlier, in November 2005, but Azul had not responded

14  to Sun's pending proposal. During both telephone calls, Azul's representatives expressed

15  appreciation as to Sun's willingness to entertain high-level discussions.

16      24.     On March 8, 2006, Sun again met with Azul. At that meeting, Sun further

17  discussed with Azul the process that Sun had proposed for investigating Sun's trade secret

18  claims. In response to input from Azul, Sun agreed to modify the process to include several

19  restrictions relating to access to information, including restrictions on Sun's use of information,

20  the number of employees with access to information, and the use of Azul's outside counsel – not

21  Sun's counsel – to host and facilitate the investigation. Sun also presented a third settlement

22  proposal to Azul.

23      25.     On March 9, 2006, Sun provided to Azul a copy of a revised agreement that

24  memorialized the discussions of the previous day on a process to evaluate trade secret

25  information as well as a copy of Sun's most recent settlement proposal.

26      26.     On March 10, 2006, Azul telephoned Sun to indicate that it would be responding

27  to Sun's most recent settlement proposal, and that it would be providing further comment on the

28  process to facilitate investigation of Sun's trade secret claims.

27.     On March 14, 2006, rather than responding to Sun's proposal to evaluate Azul's use of Sun's trade secrets or to Sun's third licensing proposal, Azul filed suit.

28.     Throughout 2005 and into 2006, Sun negotiated with Azul in good faith to resolve the parties' differences and to protect its technology.  Notwithstanding three specific business proposals made by Sun that were intended to free up Azul and its products to continue to take advantage of Sun's intellectual property without interruption, Azul refused to respond in any meaningful way.  On the eve of engaging in a meaningful exchange to evaluate Azul's use of Sun's trade secrets, Azul abruptly terminated negotiations by filing the instant declaratory judgment lawsuit against Sun.

29.     Therefore, Sun counterclaims that Azul has misappropriated Sun's trade secret information relating to Sun's business plans and strategy, customer and partner lists, as well as technical information relating at least to the use of speculative locking and transactional memory. Sun also counterclaims against Azul for infringement of U.S. Patent Nos. 6,862,664; 6,938,130; 6,003,065; 6,901,491; 7,013,454; 6,823,351; 6,408,383; 6,542,990; and 6,892,295.  As for the other Sun patents identified in Azul's March 14, 2006 Complaint for Declaratory Judgment, Sun intends to seek discovery from Azul and expressly reserves the right to add infringement allegations directed to some or all of those patents.

## JURISDICTION AND VENUE

30.     This Court has original jurisdiction over the claims asserted herein according to 28 U.S.C. §§ 1331, 1338, as well as supplemental jurisdiction under 28 U.S.C. § 1367(a).

31.     Venue is proper in this judicial district, according to 28 U.S.C. § 1400.

## COUNT I

### (Misappropriation of Sun's Trade Secrets)

32.     Paragraphs 1-31 above are incorporated herein by reference.

33.     As explained above, Sun's Trade Secret Information has great economic value to Sun in that Sun has spent substantial time and money to develop that information.  Sun's Trade Secret Information further has independent economic value because the public or others who could derive economic value from its disclosure or use do not generally know it, and could not

SUN'S SECOND AMENDED ANSWER
AND COUNTERCLAIMS
(Case No. C 06-01988 (CRB) EMC)

1   obtain it without expenditure of substantial time, effort and expense, if at all.

2          34.    Sun has made all reasonable efforts to maintain Sun's Trade Secret Information in

3   such a manner as to keep it confidential and from being used in any fashion other than as directed

4   by Sun. For example, each of the former Sun employees identified above in paragraph 9 signed

5   an Employee Proprietary Information Agreement ("EPIA") when they joined Sun. These

6   employees thereby agreed to keep confidential and not disclose or make use of at any time

7   (including during their subsequent employment at Azul) any Sun trade secrets or confidential or

8   proprietary information.

9          35.    Azul misappropriated Sun's Trade Secret Information through the targeted hiring

10   of at least the Sun employees identified above in paragraph 9, among other ways. These Azul

11   employees acquired knowledge of Sun's Trade Secret Information while employed at Sun, with a

12   duty to maintain its secrecy or limit its use. These employees reconfirmed in writing their duty of

13   confidentiality to Sun as described in the EPIA before they left to subsequently join Azul.

14          36.    Azul is inappropriately using Sun's Trade Secret Information by, *inter alia*, the

15   acts described hereinabove in violation of California Civil Code §§ 3426, *et seq.* This

16   information is not generally known in the business or industry and/or was not known at the time

17   of Azul's misappropriation.

18          37.    Azul acted willfully and maliciously in misappropriating Sun's Trade Secret

19   Information, with knowledge of the proprietary nature of Sun's Trade Secret Information. For

20   example, Cliff Click attended a Sun Proprietary/Need to Know presentation on the SPARC

21   processor roadmap where Sun's plans to use transactional memory/speculative locking

22   technology in next generation microprocessors was discussed. After Cliff Click joined Azul, he

23   presented at the IBM Research Center many aspects of Sun's transactional memory design that

24   were recast as Azul technology.

25          38.    Sun will suffer irreparable harm – including the misappropriation and loss of

26   sensitive and valuable trade secrets, and the resulting competitive disadvantage in the

27   marketplace – in the absence of a permanent injunction. The irreparable harm to Sun outweighs

28   any potential harm to Azul. For example while employed at Sun, Stephen DeWitt (Vice

1  President and General Manager of Content Delivery and Edge Computing) and Shahin Khan

2  (Vice President of High Performance Computing) had access to confidential Sun channel partner,

3  customer, and partner lists.  Now as Azul executives, DeWitt (President and Chief Executive

4  Officer) and Khan (Vice President and Chief Marketing Officer) are marketing Azul products

5  based on Sun innovation to targeted Sun customers and partners.  DeWitt and Khan are using

6  their knowledge of Sun's customer and partner needs, preferences, desires, and purchasing habits

7  learned in the course of performing their duties at Sun to put Sun at a competitive disadvantage

8  in the marketplace.  DeWitt and Khan are in direct violation of their Employee Proprietary

9  Information Agreements prohibiting the use of Sun's trade secrets including, but not limited to,

10  business plans, marketing plans, and strategies that were implemented in Sun's Niagara

11  processor.

12        39.    Sun is entitled to damages at least in the amount of its actual harm and in the

13  amount by which Azul has been unjustly enriched by its wrongful actions.  Sun is also entitled to

14  exemplary and punitive damages because Azul acted intentionally and maliciously.

15  **COUNT II**

16  **(Infringement of the '664 Patent)**

17        40.    Paragraphs 1-31 above are incorporated herein by reference.

18        41.    Sun is the owner of all right, title, and interest in United States Patent No.

19  6,862,664 ("the '664 patent") entitled "Method and Apparatus for Avoiding Locks by

20  Speculatively Executing Critical Sections."  The '664 patent issued on March 1, 2005.

21        42.    The '664 patent is directed to transactional memory.

22        43.    Azul has infringed and is continuing to infringe the claims of the '664 patent in its

23  manufacture, use, sale, offer for sale, importation of network attached processing systems that

24  use transactional memory, and by inducing others to sell and/or use such systems.

25        44.    Sun gave Azul actual notice of infringement of the '664 patent during a

26  presentation given on April 6, 2005.

27        45.    Upon information and belief, Azul's infringement of the '664 patent has been

28  willful and deliberate since at least April 6, 2005.

16

SUN'S SECOND AMENDED ANSWER<br>AND COUNTERCLAIMS<br>(Case No. C 06-01988 (CRB) EMC)

46.     Sun has been damaged by such infringement, and unless enjoined by this Court, Azul will continue its infringing activity.

**COUNT III**

**(Infringement of the '130 Patent)**

47.     Paragraphs 1-31 above are incorporated herein by reference.

48.     Sun is the owner of all right, title, and interest in United States Patent No. 6,938,130 ("the '130 patent") entitled "Method and Apparatus for Delaying Interfering Accesses from Other Threads during Transactional Program Execution." The '130 patent issued on August 30, 2005.

49.     The '130 patent is directed to transactional memory.

50.     Azul has infringed and is continuing to infringe the claims of the '130 patent in its manufacture, use, sale, offer for sale, importation of network attached processing systems that use transactional memory, and by inducing others to sell and/or use such systems.

51.     Sun gave Azul actual notice of infringement of the '130 patent during a presentation given on September 13, 2005.

52.     Upon information and belief, Azul's infringement of the '130 patent has been willful and deliberate since at least September 13, 2005.

53.     Sun has been damaged by such infringement, and unless enjoined by this Court, Azul will continue its infringing activity.

**COUNT IV**

**(Infringement of the '065 Patent)**

54.     Paragraphs 1-31 above are incorporated herein by reference.

55.     Sun is the owner of all right, title and interest in United States Patent No. 6,003,065 ("the '065 patent") entitled "Method and System for Distributed Processing of Applications on Host and Peripheral Devices." The '065 patent issued on December 14, 1999.

56.     The '065 patent is directed to a distributed data processing system.

57.     Azul has infringed and is continuing to infringe the claims of the '065 patent in its manufacture, use, sale, offer for sale, importation of network attached processing systems, and by

17                SUN'S SECOND AMENDED ANSWER
                  AND COUNTERCLAIMS
                  (Case No. C 06-01988 (CRB) EMC)

1  inducing others to sell and/or use such systems.

2      58.     Sun gave Azul actual notice of infringement of the '065 patent during a

3  presentation given on February 1, 2006.

4      59.     Upon information and belief, Azul's infringement of the '065 patent has been

5  willful and deliberate since at least February 1, 2006.

6      60.     Sun has been damaged by such infringement, and unless enjoined by this Court,

7  Azul will continue its infringing activity.

8                              **COUNT V**

9                     **(Infringement of the '491 Patent)**

10     61.     Paragraphs 1-31 above are incorporated herein by reference.

11     62.     Sun is the owner of all right, title and interest in United States Patent No.

12  6,901,491 ("the '491 patent") entitled "Method and Apparatus for Integration of Communication

13  Links with a Remote Direct Memory Access Protocol." The '491 patent issued on May 31,

14  2005.

15     63.     The '491 patent is directed to a communication system for a multi-chip processor.

16     64.     Azul has infringed and is continuing to infringe the claims of the '491 patent in its

17  manufacture, use, sale, offer for sale, importation of network attached processing systems that

18  use multi-core processors, and by inducing others to sell and/or use such systems.

19     65.     Sun gave Azul actual notice of the '491 patent during a presentation given on

20  September 13, 2005.

21     66.     Upon information and belief, Azul's infringement of the '491 patent has been

22  willful and deliberate since at least September 13, 2005.

23     67.     Sun has been damaged by such infringement, and unless enjoined by this Court,

24  Azul will continue its infringing activity.

25                             **COUNT VI**

26                    **(Infringement of the '454 Patent)**

27     68.     Paragraphs 1-31 above are incorporated herein by reference.

28     69.     Sun is the owner of all right, title and interest in United States Patent No.

18                   SUN'S SECOND AMENDED ANSWER
                         AND COUNTERCLAIMS
                     (Case No. C 06-01988 (CRB) EMC)

DM_US\8421271.v1

1    7,013,454 ("the '454 patent") entitled "Thread Suspension System and Method Using Trapping

2    Instructions." The '454 patent issued on March 14, 2006.

3            70.    The '454 patent is directed to techniques for facilitating garbage collection in

4    software environments.

5            71.    Azul has infringed and is continuing to infringe the claims of the '454 patent in its

6    manufacture, use, sale, offer for sale, importation of network attached processing systems that

7    implement garbage collection, and by inducing others to sell and/or use such systems.

8            72.    Sun gave Azul notice of the allowed claims of Patent Application No. 09/986,231,

9    which issued as the '454 patent, during a presentation given on February 1, 2006.

10           73.    Upon information and belief, Azul's infringement of the '454 patent has been

11   willful and deliberate since at least March 14, 2006.

12           74.    Sun has been damaged by such infringement, and unless enjoined by this Court,

13   Azul will continue its infringing activity.

14                                    **COUNT VII**

15                          **(Infringement of the '351 Patent)**

16           75.    Paragraphs 1-31 above are incorporated herein by reference.

17           76.    Sun is the owner of all right, title and interest in United States Patent No.

18   6,823,351 ("the '351 patent") entitled "Work-Stealing Queues for Parallel Garbage Collection."

19   The '351 patent issued on November 23, 2004.

20           77.    The '351 patent is directed to techniques for implementing work stealing in

21   parallel garbage collectors.

22           78.    Azul has infringed and is continuing to infringe the claims of the '351 patent in its

23   manufacture, use, sale, offer for sale, importation of network attached processing systems that

24   implement work stealing in parallel garbage collection, and by inducing others to sell and/or use

25   such systems.

26           79.    Sun has been damaged by such infringement, and unless enjoined by this Court,

27   Azul will continue its infringing activity.

28           80.

19

DM_US\8421271.v1

**COUNT VIII**

**(Infringement of the '383 Patent)**

81.    Paragraphs 1-31 above are incorporated herein by reference.

82.    Sun is the owner of all right, title and interest in United States Patent No. 6,408,383 ("the '383 patent") entitled "Array Access Boundary Check By Executing BNDCHK Instruction with Comparison Specifiers." The '383 patent issued on June 18, 2002.

83.    The '383 patent is directed to techniques for array bounds checking.

84.    Azul has infringed and is continuing to infringe the claims of the '383 patent in its manufacture, use, sale, offer for sale, importation of network attached processing systems that implement array bounds checking, and by inducing others to sell and/or use such systems.

85.    Sun has been damaged by such infringement, and unless enjoined by this Court, Azul will continue its infringing activity.

**COUNT IX**

**(Infringement of the '990 Patent)**

86.    Paragraphs 1-31 above are incorporated herein by reference.

87.    Sun is the owner of all right, title and interest in United States Patent No. 6,542,990 ("the '990 patent") entitled "Array Access Boundary Check By Executing BNDCHK Instruction with Comparison Specifiers." The '990 patent issued on April 1, 2003.

88.    The '990 patent is directed to techniques for array bounds checking.

89.    Azul has infringed and is continuing to infringe the claims of the '990 patent in its manufacture, use, sale, offer for sale, importation of network attached processing systems that implement array bounds checking, and by inducing others to sell and/or use such systems.

90.    Sun has been damaged by such infringement, and unless enjoined by this Court, Azul will continue its infringing activity.

**COUNT X**

**(Infringement of the '295 Patent)**

91.    Paragraphs 1-31 above are incorporated herein by reference.

92.    Sun is the owner of all right, title and interest in United States Patent No.

20

SUN'S SECOND AMENDED ANSWER
AND COUNTERCLAIMS
(Case No. C 06-01988 (CRB) EMC)

1    6,892,295 ("the '295 patent") entitled "Processing Architecture Having An Array Bounds Check

2    Capability." The '295 patent issued on May 10, 2005.

3          93.     The '295 patent is directed to techniques for array bounds checking.

4          94.     Azul has infringed and is continuing to infringe the claims of the '295 patent in its

5    manufacture, use, sale, offer for sale, importation of network attached processing systems that

6    implement array bounds checking, and by inducing others to sell and/or use such systems.

7          95.     Sun has been damaged by such infringement, and unless enjoined by this Court,

8    Azul will continue its infringing activity.

9

10   WHEREFORE, Sun requests that the Court:

11        A.     As to Count I for the Misappropriation of Sun's Trade Secrets:

12              i.    Award damages in an amount to be proven at trial;

13             ii.    Award exemplary and punitive damages in an amount sufficient to punish

14                  Azul and deter similar conduct in the future;

15            iii.    Enter a judgment for a permanent injunction ordering Azul to cease and

16                  desist from its wrongful conduct;

17             iv.    Enter an order and permanent injunction requiring such affirmative acts as

18                  are appropriate to protect Sun's trade secrets;

19             v.    Award Sun its attorneys' fees pursuant to California Civil Code § 3426.4;

20            vi.    Award Sun its costs of suit; and

21           vii.    Award such other relief as is available under statute and as the Court

22                  deems proper.

23        B.     Enter a judgment that Azul has infringed the '664, '130, '065, '491, '454, '351,

24    '383, '990 and '295 patents ("Counterclaim Patents-in-Suit") in violation of 35 U.S.C. § 271;

25        C.     Enter an injunction against Azul's continued infringement of the Counterclaim

26    Patents-in-Suit;

27        D.     Award Sun its damages pursuant to 35 U.S.C. § 284, including damages for

28    Azul's willful infringement of the Counterclaim Patents-in-Suit;

        SUN'S SECOND AMENDED ANSWER
AND COUNTERCLAIMS
(Case No. C 06-01988 (CRB) EMC)

1        E.    Find that Sun is the prevailing party in this action and that this is an exceptional

2    case as defined in 35 U.S.C. § 285, and award Sun its reasonable attorney fees as allowed

3    thereunder;

4        F.    Enter a judgment against Azul and award Sun damages for the gains, profits, and

5    advantages derived by Azul, directly or indirectly, by its unlawful acts, in an amount adequate to

6    compensate Sun for its monetary damages and/or for loss of or damage to its reputation and

7    goodwill, resulting from the wrongful conduct of Azul, together with costs and interest;

8        G.    Award Sun its costs and pre-judgment and post-judgment interest; and

9        H.    Award such other relief to Sun as this Court deems just and proper.

**DEMAND FOR A JURY TRIAL**

Sun demands a trial by jury on all issues so triable.

Dated:  January 26, 2007

By:         */s/ Henry C. Bunsow*
          Henry C. Bunsow (State Bar No. 60707)
          Benjamin K. Riley (State Bar No. 112007)
          HOWREY LLP
          525 Market Street, Suite 3600
          San Francisco, CA  94105
          Telephone:  (415) 848-4900
          Facsimile:   (415) 848-4999
          E-Mail:  BunsowH@howrey.com

          Thomas M. Dunham (*pro hac vice*)
          Nelson M. Kee (*pro hac vice*)
          HOWREY LLP
          1299 Pennsylvania Avenue, NW
          Washington, DC  20004
          Telephone:  (202) 783-0800
          Facsimile:   (202) 383-6610
          E-Mail:  DunhamT@howrey.com
          E-Mail:  KeeN@howrey.com

          Attorneys for Defendant and
          Counterclaim Plaintiff
          SUN MICROSYSTEMS, INC.

SUN'S SECOND AMENDED ANSWER
AND COUNTERCLAIMS
(Case No. C 06-01988 (CRB) EMC)

CERTIFICATE OF SERVICE

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served this 26th day of January, 2007, with a copy of this document via the Court's CM/ECF system.  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.


_/s/ Henry C. Bunsow_____
Henry C. Bunsow

23

SUN'S SECOND AMENDED ANSWER
AND COUNTERCLAIMS
(Case No. C 06-01988 (CRB) EMC)

DM_US\8421271.v1